UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 14-10032

ELLEN COMLEY

v.

MEDIA PLANNNING GROUP, HAVAS MEDIA,
LORI HILTZ, ANDREW ALTERSOHN, and GARY MCCORRY

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

June 12, 2015

STEARNS, J.

In this lawsuit, plaintiff Ellen Comley challenges her termination by her former employer, Havas Media (d/b/a Media Planning Group). The individually named defendants were her supervisors at Havas. Comley filed her Complaint in the Barnstable Superior Court claiming nonpayment of wages in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, and employment discrimination (age and gender) in violation of Mass. Gen. Laws ch. 151B, together with various common-law claims founded in law and equity. Havas removed the case to the federal district court on diversity grounds. Before the court is defendants' motion for summary judgment. Oral argument was heard on May 29, 2015.

BACKGROUND

Until the end of 2012, what is now known as Havas Media operated as two separate companies.  The Media Planning Group USA LLC (MPG) concentrated on planning and placing advertisements in traditional media, such as print, radio, and television, while the Media Contacts Corporation (MCC), focused on digital media.  Statement of Undisputed Material Facts (SOF) ¶ 3.

MPG hired Comley in 2005 as a Senior Vice President and Managing Director.  SOF ¶ 4.  She had oversight of the company's Boston office. Comley's last formal performance evaluation took place on February 27, 2012.  Maria Luisa Francoli, the CEO of MPG's North American operations, rated Comley as on, or significantly above, target in every performance category.  Pl.'s Ex. 4.  A second informal "360" assessment, conducted in August of 2012 after a new CEO, Lori Hiltz, was appointed, praised Comley as "a smart strategic marketing and media leader.  Excellent presenter and communicator!  Well respected by clients.  A creative media thinker. . . . Work is always better when Ellen's involved."  Pl.'s Ex. 5.

During the fall of 2012, Comley discussed with Hiltz[1] the possibility of taking a position at MPG with greater national responsibility.  Specifically,

---

[1] Defendants emphasize Hiltz's gender (female) and age (mid-fifties). As Comley points out, Hiltz's gender and age are legally irrelevant because

they discussed a position as Chief Marketing Officer (CMO).  In November 2012, Hiltz asked Comley to begin working on CMO-related tasks.[2]  SOF ¶¶ 10-17.

Also in November of 2012, global management of MPG and MCC decided to integrate the two companies under the umbrella of Havas Media. SOF ¶ 18.  In December of 2012, Hiltz informed Comley that she would be responsible for the management of the combined MPG and MCC Boston and San Francisco offices.  SOF ¶ 19.  In January of 2013, Hiltz notified Comley that the reorganization plan did not include a position of CMO. SOF ¶ 20. Hiltz circulated an email formally announcing Comley's new managerial duties on February 6, 2013.  Pl.'s Ex. 12.  Comley was then the oldest employee at the executive level at Havas Media.

Prior to the reorganization, Comley had reported directly to Hiltz. After the reorganization, Comley reported to Andrew Altersohn, the President (a position he had previously held at MCC) of Havas Media.  SOF ¶ 22.  Comley had significantly more responsibility in her new position.  The

---

the law recognizes the possibility of intra-class discrimination.  *See Castenada v. Partida*, 430 U.S. 482, 499 (1977).

[2] In her deposition, Hiltz denied that she had discussed the CMO position with Comley.  Pl.'s Ex. 7 at 26 (Hiltz Dep.).  However, internal emails between the two women suggest otherwise.  Pl.'s Exs. 9 & 10.

number of people she oversaw increased from approximately 75 to 150.  She assumed, in addition to her prior duties, those previously performed by Thomas Penque, the Senior Vice President of MCC in Boston.  Her job was made more difficult by Penque.[3]  According to Comley, Penque failed or refused to give her "fundamental documents that she needed to facilitate the transition tasks."  Opp'n at 3.  Penque remained in the Boston office as Senior Vice President of Media Integration, a position created by Hiltz to give Penque a position in the new organizational structure.[4]  SOF ¶ 24.

According to defendants, Comley did not perform well in her new position.  By March 2013 (only five weeks after Comley had been promoted), Hiltz was considering terminating her for poor performance.[5]  SOF ¶ 46.

---

[3] In 2013, Penque was approximately 40 years old.  Opp'n at 8 n.1. Moreover, in contrast to Comley's assessments in 2012, Penque's included some negative comments, including "Tom would benefit [from] more closely working with clients and client teams.  It is a management style thing but he seems to operate in a hands-off manner.  Some of his people are not as strong as others and seem to need more management than they get."  At least one commentator thought that Penque should work more closely with Comley to learn from her.  Pl.'s Ex. 18.

[4] Comley complains that defendants did not advertise Penque's new position as required by company policy.  As defendants point out, Havas Media did not advertise any of the new positions.  Reply at 7.

[5] In her deposition, Hiltz alleged that she first began hearing complaints about Comley from Altersohn in 2012.  In his testimony, Altersohn denied complaining to Hiltz about Comley's performance at any time in 2012.  Pl.'s Ex. 8 at 44.

Among the performance shortcomings that defendants claim led to Comley's termination are her alleged failure to recruit new clients; the mishandling of communications with Fidelity, a major client; her lack of understanding of Havas Media's digital business; and her failure to properly manage her subordinate employees. Defs.' Mem. at 13-17.

Around this time, Havas senior managers (Hiltz among them) began calculating the bonuses that eligible employees would receive under the company's Management Objective Plan (MBO) for the year 2012. The opportunity to participate in the MBO was included in the job offer that Comley had received from MPG in 2005. According to the offer letter, Comley's compensation would consist of a base salary and an MBO bonus "based on individual performance and the company's overall financial success." Pl.'s Ex. 31 at 1. The MBO specified eligibility criteria in two categories: (1) "Green Light Objectives" based on financial targets for the company as a whole; and (2) Individual Quantitative and Qualitative Objectives. Pl.'s Ex. 33. Emails sent in March 2013 between the Senior Vice President for Human Services, Yorlene Goff, and the Chief Financial Officer, Gary McCorry, indicate that Comley's bonus had been initially calculated pro forma at the full amount for which she was eligible (30% of her base pay, or $104,160). Pl.'s Exs. 37-40.

On April 15, 2013, Goff, at the direction of Hiltz, requested permission from Havas Media headquarters to terminate Comley, which was given on April 18, 2013.  SOF ¶¶ 47 & 48.  However, in the aftermath of the Boston Marathon bombings (which occurred on April 15, 2013), Hiltz decided to postpone Comley's termination.  SOF ¶ 49.  On April 20, 2013, Hiltz hosted a leadership dinner in New York.  Defendants allege that Comley arrived inebriated and inappropriately dressed.  (Comley maintains that she was on crutches because of foot surgery and denies any excessive drinking).  SOF ¶ 45.

As the month progressed, email exchanges among McCorry, Hiltz, and Goff, reflect a decision to reduce the amount of the MBO that Comley would receive, eventually to nothing at all.  *See* Pl.'s Exs. 41 & 42.  Comley was the only senior executive at the former MPG who did not receive an MBO bonus for 2012.  Opp'n at 17.  On April 25, 2013, Hiltz and McCorry met with Comley and told her that her performance needed to improve.  Although defendants characterize the discussion as tantamount to placing Comley on a 30-day Performance Improvement Plan, *see* SOF ¶ 51, nothing was put in writing as company policy required.  Pl.'s Resp. SOF ¶ 51.  In May of 2013, the Boston office lost the Carnival Cruise Lines account.  Altersohn testified that he had

been "blindsided" by the loss of so major a client and blamed Comley for failing to warn him that the account was in jeopardy.  SOF ¶ 54.

On June 3, 2013, Hiltz informed Comley that she was being terminated.  SOF ¶ 55.  At the time of her termination, Comley was 55 years old.  Comley was replaced by Debi Kleiman, who Comley alleges was then in her 40's.   According to internal emails, Kleiman was considered by defendants to be a "risky" hire because she lacked advertising agency and large scale employee/company experience. Pl.'s Ex. 47.  Shortly after Comley was fired, Penque was promoted to Executive Vice President with the title of Chief Talent Officer.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphases in original).  A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir.

1993).   In assessing the genuineness of a material dispute, the facts are to be "viewed in the light most flattering to the party opposing the motion."   *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).

Wage Act and Related Common-Law Claims

Comley alleges violations of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, stemming from the refusal to award her the 2012 MBO bonus (Count I), and for defendants' alleged retaliation against her for objecting to being passed over for a bonus.   *Id.*, § 148A (Count II).   The purpose of the Wage Act is to "prevent the unreasonable detention of wages." *Boston Police Patrolmen's Ass'n v. Boston*, 435 Mass. 718, 720 (2002).   The Act does not define what is meant by a wage.   It does, however, explicitly extend its protections "to the payment of commissions when the amount of such commissions . . . has been definitely determined and has become due and payable to such employee."   Mass. Gen. Laws ch. 149, § 148. Massachusetts courts have held that "definitely determined" means that "the amount owed the plaintiff [is] arithmetically determinable."   *Wiedmann v. The Bradford Grp., Inc.*, 444 Mass. 698, 708 (2005).

Defendants advance two arguments in support of their contention that the Wage Act does not apply to the MBO plan.   First, they maintain that payment of the MBO was entirely discretionary; and second, they argue that

payment of the MBO was contingent on Comley remaining in good standing. Defendants point to language in Comley's offer letter stating that her bonus eligibility will be "at the discretion of our CEO, based on your individual performance and MPG's overall financial performance." Pl.'s Ex. 31 at 1. Similarly, they cite  language in the 2012 MBO plan guidelines that states that "[t]he availability and terms of MBOs are at the sole discretion of Havas Media's global Board of Directors and can be eliminated or amended at any time." Pl.'s Ex. 32.

The strongest case on which defendants rely is *Weems v. Citigroup Inc.*, 453 Mass. 147 (2009).   In *Weems*, the compensation at issue derived from an employee stock plan that awarded employees the opportunity to acquire restricted stock. Plaintiffs had voluntarily terminated their employment and had, or so the company argued, forfeited the portion of the stock option that had yet to vest. The *Weems* court held that it is the element of discretion that determines whether or not a bonus is compensation protected by the Wage Act.  "The operative fact here is that bonus awards under these programs are discretionary, not because they are labeled bonuses, but because the employers are, apparently, under no obligation to award them."  *Weems*, 453 Mass. at 153-154; *see also Weiss v. DHL Exp.,*

*Inc.*, 718 F.3d 39, 48 (1st Cir. 2013) ("Because DHL was under no obligation to pay the bonus, Weiss was not deprived of wages that he [had] earned.").

In response, Comley cites a district court decision, *McAleer v. Prudential Ins. Co. of Am.*, 928 F. Supp. 2d 280 (D. Mass. 2013), in support of her argument that because the MBO payment is based on "objective criteria," it should be treated as an earned commission rather than as a bonus. The reliance on *McAleer* is misplaced. McAleer was terminated by Prudential for failing to meet sales targets. Prudential argued that McAleer's sales commissions were in fact bonuses because under terms of the plan Prudential retained the "complete discretion for interpretation and payment calculation — including discretion to determine whether McAleer was eligible to receive commissions as an active employee in good standing." *Id.* at 288. The district court rejected that argument, holding that "[d]iscretion prevents commissions from being definitely determined [only] if the employer is under no obligation to award them." *Id.* That was not true in Prudential's case. Although Prudential had retained the discretion to alter the formula by which commissions were calculated, once a commission had been earned under the formula then in place, Prudential had no discretion to withhold it. The district court distinguished between the determination of how a commission was to be earned, which was discretionary, and once

earned, the decision to pay it, which was not.  "The plan does not afford Prudential carte blanche to withhold or modify commission payments for any reason."  *Id.*  In this case, the contrast with the 2012 MBO plan could not be clearer: "The availability and terms of MBOs are at the sole discretion of Havas Media's global Board of Directors and can be eliminated or amended at any time."  Pl.'s Ex. 32.[6]  While the result may seem harsh, discretion is what it is, and if retained by the employer over the award of a bonus, the employee, under *Weems,* has no resort to the Wage Act.[7]

Comley also alleges that she was penalized for having inquired into her bonus in the first quarter of 2013 in violation of Mass. Gen. Laws ch. 149, § 148A ("No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the

---

[6] Although my analysis focuses on the discretion Havas retained over its payment of any bonus at all, I note that there were discretionary elements in the calculation of the bonus that also undermine Comley's claim.  The bonus is not a wage that can be "arithmetically calculable" if the extent to which an employee has met her achievement goals as specified in the bonus plan is determined by the CEO.  *Wiedmann*, 444 Mass. at 708.

[7] Because the decision to award the MBO bonus was a matter of employer discretion, there is no need for the court to address defendants' second argument that Comley was not eligible for a bonus as she was not an employee in good standing at the time the bonuses were distributed, other than to note that it is not clear that Comley was in "bad standing" at the time defendants began the process of deciding whether or not to award her a bonus.

wages and hours provisions of this chapter."). As Comley had no right to payment under the Wage Act, she has no right to a retaliatory remedy based on the statute in the absence of any evidence that her employers at the very least perceived her to be attempting to invoke her (non-existent) rights under the Act.[8]

Discrimination Claims

Comley claims that her termination by Havas Media was motivated by her age and gender in violation of Mass. Gen. Laws ch. 151B (Counts XII, XIV, and XVI).[9] In employment discrimination cases, Massachusetts courts generally follow the holdings in federal Title VII cases. Because Comley offers no evidence of direct discrimination, the analysis will follow the burden-shifting framework applied in Title VII cases involving indirect or circumstantial evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Wheelock Coll. v. Massachusetts Comm'n Against*

---

[8] Comley also claims a breach of contract (Count VI) with respect to the nonpayment of the MBO bonus. The determination that the employer retained the unilateral discretion as to whether or not to award the bonus at all, also disposes of the contract claim, as well as the claims of Detrimental Reliance/Promissory Estoppel (Count VIII) and Breach of Implied Contract (Count IX). The claim of Unjust Enrichment (Count XI) is not a cause of action, but a theory of recovery that does not apply where a plaintiff has no entitlement to property in the hands of a defendant.

[9] There is no Count XIII or Count XV.

*Discrimination*, 371 Mass. 130 (1976) (adopting the *McDonnell Douglas* framework).

*McDonnell Douglas* establishes a three-stage process for narrowing the issues in an indirect discrimination case.  At stage one, plaintiff must establish a prima facie case of discrimination.   In an employment termination case, this requires a showing that: (1) she is a member of a protected class (in this case female and/or at least 40 years of age); (2) she performed her job at an acceptable level; (3) she was terminated; and (4) her employer filled her position by hiring another individual with similar qualifications.  *See Blare v. Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 441 (1995).  Under Massachusetts law, a prima facie case of age discrimination must also establish that a plaintiff's replacement was at least five years her junior.  *See Knight v. Avon Prods., Inc.*, 438 Mass. 413, 425 (2003).  "[T]he prima facie case is 'a small showing that is not onerous and is easily made.'"  *Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003), quoting *Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003). If a prima facie case is established, it "creates a presumption of discrimination."  *Abramian v. President & Fellows of Harvard Coll.*, 432 Mass. 107, 116 (2000).

At stage two, a defendants can rebut the presumption that the adverse employment action was discriminatory by articulating "a lawful reason or reasons for its employment decision [and] produc[ing] credible evidence to show that the reason or reasons advanced were the real reasons." *Id.* (internal quotation marks and citation omitted).  Defendants may offer any reason in satisfying their burden of production, even a nonsensical one, so long as the stated reason is not discriminatory.  "If the employer meets its burden of production at stage two, the presumption created by the prima facie case drops from the case and the proceedings advance to the third stage." *Id.* at 117.

At stage three, the burden of proof shifts back to the plaintiff who must "show that the basis of the employer's decision was unlawful discrimination." *Id.*  One common method by which a plaintiff may satisfy her burden of persuasion is by demonstrating that the reasons proffered by the employer are pretextual.  Pretext may be found by a fact-finder where there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998) (internal quotation marks and citations omitted).  Under Massachusetts law, a finding that the defendants' stated reasons for terminating plaintiff's employment are

pretextual is itself sufficient to support a finding of discriminatory animus. *See Blare*, 419 Mass. at 443.

With regard to the discrimination claims, Comley was a 55 year old woman at the time she was terminated, and therefore a member of the protected classes.  While defendants contest whether she performed her job satisfactorily, the objective evidence could be found by a jury to suggest that she did. (Here, I refer to her favorable evaluation in February of 2012, the positive comments included in her 360 review in August 2012, and the denial by Altersohn of Hiltz's claim that he had complained about Comley's performance in 2012).  It is true, as defendants assert, that Comley has failed to provide objective proof that her replacement, Kleiman, was five or more years her junior.  Comley testified that Kleiman was 40 years old in 2013.  Defs.' Ex. 1 at 129 (Comley Dep.).  She does not state, however, the basis of her knowledge.  Comley also points to Penque's testimony that Kleiman was 40 or 50 years old, but this testimony again is too attenuated to satisfy the evidentiary rules regarding opinion testimony.[10]  Defs.' Ex. 5 at 132 (Penque Dep.).

---

[10] Comley's attorney stated at oral argument that she had submitted a LinkedIn profile of Kleiman demonstrating that she was approximately forty years old when hired.  I do not find the profile in the record.  It appears that counsel may have confused Kleiman with Penque and Millet for whom LinkedIn profiles were submitted.  Opp'n at 8 n.1 and 14 n.2.

The *Knight* decision does, however, admit of a narrow exception.  "In an indirect evidence case when the disparity in age is less than five years . . . a plaintiff still may present a triable claim if there is other evidence that the termination occurred in circumstances that would raise a reasonable inference of unlawful age discrimination."  *Knight* 438 Mass. at 425.  In this instance, Comley points to the more favorable treatment of younger colleagues, Penque and Andrea Millet in particular, and the fact that her replacement was significantly less qualified than she.  Because there is a "relatively low threshold showing necessary to establish a prima facie case," I find this additional evidence sufficient to satisfy Comley's burden at stage one.  *Hodgens*, 144 F.3d at 165-166.

At stage two, defendants have the burden of production.  In discharging this burden, they allege various non-discriminatory reasons for terminating Comley, all of which relate to her performance.  They allege, *inter alia*, that Hiltz began to have concerns about Comley's work in 2012; that Comley failed to meet with important clients, specifically Panasonic and Fidelity; that Comley lacked familiarity with the digital side of the business; that she failed to successfully integrate the staff of MCC and MPG; that she failed to meet a digital media sales goal; that she regularly failed to inform Altersohn of her whereabouts; and finally, that a major client, Carnival

Cruise Lines, was lost on her watch without the sending up of a distress signal. Defendants also point to her allegedly inappropriate dress and behavior at a key executive leadership dinner that they say "called [her] judgment into question." Defs.' Mem. at 15.

The defendants' burden of production being satisfied, at stage three, Comley responds as she did with respect to her prima facie case, that defendants' complaints about her performance are inconsistent with the reviews she received in 2012. As Comley points out, the bulk of the complaints about her work derive from Hiltz who claimed to be echoing Altersohn's criticisms of her performance in 2012. Pl.'s Ex. 7 at 29 (Hiltz Dep.). Yet, as Comley notes, Altersohn denied having heard any complaints about Comley's performance in 2012. Pl.'s Ex. 8 at 44 (Altersohn Dep.). Moreover, at the time that Altersohn was supposedly complaining, Hiltz raised with Comley the prospect of her being promoted to a position of CMO. Pl.'s Exs. 9 & 10. In a similar vein, while defendants cite a soured relationship with Fidelity as Comley's responsibility, in a contemporaneous client satisfaction survey Fidelity expressed its satisfaction with the work of Comley's group, while Fidelity's Executive Vice President of Communications and Advertising emailed Comley to express his happiness with her work. Pl.'s Exs. 20 & 21. (Hiltz in her deposition conceded that no

one from Fidelity had complained about Comley.  Pl.'s Ex. 7 at 35).  Finally, while defendants portray the loss of the Carnival account in May of 2013 as the final straw, Comley points to a similarly situated younger female counterpart in New York (Andrea Millett) who also lost a major client at about the same time, but was not terminated.  Pl.'s Ex. 24.[11]

Because under Massachusetts law, a jury can find discrimination on the basis of pretext alone, I find the responses provided by Comley adequate to not only rebut defendants stage two proffer, but to raise triable issues of fact as to whether Comley was a victim of age and/or gender discrimination. *See Blare*, 419 Mass. at 443; *see also Petitti v. New Eng. Tel. & Tel. Co.*, 909 F.2d 28, 34 (1st Cir. 1990) ("This court has consistently held that determinations of motive and intent, particularly in discrimination cases, are questions better suited for the jury, as proof is generally based on inferences that must be drawn, rather than on the proverbial 'smoking gun.'" (internal quotation marks and citation omitted)). [12]

---

[11] Comley offers explanations regarding some of the defendants' complaints (for example, her seemingly bizarre behavior at the April 20, 2013 executive leadership dinner) that, if true and known to defendants, might lead a jury to question the good faith of defendants' criticism of her performance.

[12] Defendants also argue that Comley failed to exhaust her administrative remedies because she did not include information regarding Kleiman in her original complaint with the MCAD.  This is not fully accurate.

<u>Common-Law Claims</u>

Finally, Comley attempts to repackage her discrimination claims under various common-law labels, some sounding in law and others in equity. Chapter 151B is a comprehensive remedial statute, and thus precludes replication of discrimination claims in the form of common-law actions. *See id.* § 9 (exclusivity provision). The purpose of this provision is "to subject all discrimination claims to some administrative scrutiny." *Charland v. Muzi Motors, Inc.*, 417 Mass. 580, 585 (1994).[13]

<u>Claims against the individually name defendants</u>

Chapter 151B, unlike its cognate federal statutes, provides for individual personal liability. *Beaupre v. Cliff Smith & Assocs.*, 50 Mass. App.

---

Comley timely filed her complaint with the MCAD in 2013. She amended her complaint with the new information regarding Kleiman in 2014 when she learned of it.

[13] Comley also attempts to plead various contract-related, common-law claims. Comley was an at-will employee and has failed to put forward facts sufficient to establish that any of Havas' policies, procedures, or actions led to the formation of a binding employment contract. *See LeMaitre v. Massachusetts Tpk. Auth.*, 70 Mass. App. Ct. 634, 638 (2007), *aff'd*, 452 Mass. 753 (2008); *Jackson v. Action for Boston Cmty. Dev. Inc.*, 403 Mass. 8 (1988). An at-will employee may be terminated for any reason or for no reason at all and without prior warning. *Jackson*, 403 Mass. at 9. Comley also brings a claim of misrepresentation (Count X), arguing that Havas (Hiltz) defaulted on the promise to someday make Comley a CMO. It is hornbook law that statements of a purely promissory nature, as well as predictions regarding future events, are not actionable as misrepresentations. *See Commonwealth v. Drew*, 36 Mass. 179, 185 (1837).

Ct. 480, 491 (2000) (holding that individual harasser could be found liable for aiding and abetting his corporate entity which was the vehicle through which the plaintiff was dismissed for refusing his sexual advances).  While Comley has adduced sufficient facts to implicate Hiltz directly in her allegedly wrongful termination, she has offered no facts indicating that McCorry or Altersohn played any part in the decision to terminate her. Consequently, the individual claims against McCorry and Altersohn will be dismissed.

                                  ORDER

     For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u> as to Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIV, and XVI.  Summary judgment is <u>DENIED</u> as to Count XVI with regard to Havas Media (d/b/a Media Planning Group) and Lori Hiltz.  The individual claims against McCorry and Altersohn are <u>DISMISSED with prejudice</u>.  The Clerk will set the case for a jury trial on the discrimination claims.


                         SO ORDERED.

                         /s/ Richard G. Stearns
                         UNITED STATES DISTRICT JUDGE